this morning. I want to make sure we're on the right same case. You might still get the same questions even if it's the wrong case. If we ask questions in the wrong case, just humor us. Some of the cases have related issues. I'm home. So you must be Mr. Kirsten? Yes, that's correct. Eric Kirsten, Assistant Federal Defender, Eastern District of California, on behalf of Appellant Austin Burton. So we're honing in here on the Las Vegas crowd. Pardon? Honing in on the Las Vegas crowd. Yeah. They couldn't have the whole table. This is a straightforward issue. It's basically sufficiency on both arguments. I believe that in regards to the count six, which was the armed bank robbery, that this Court's opinion in Odom is really dispositive there. There was greater evidence of a weapon, and they found that it wasn't sufficient for an armed bank robbery conviction. And so I will not address that issue any further unless the Court asks me to. I think the What difference does it make on the sentence if we reversed on that count? On that count, it wouldn't matter because Mr. Burton is a career offender. So it would change the designation, but not the sentence. I'm sorry. What are you saying and not arguing about? Pardon? This is count six, which was the armed robbery conviction. OK. And again, I believe you think it's you think it's covered by Odom and it goes and you want to spend your time on the other. Yeah, correct. Well, in Odom, there was it was uncontested that a weapon was present and it was uncontested that a weapon was displayed. But because the display was inadvertent, they found that there was sufficient evidence for an armed bank robbery. Here it's contested whether a weapon was present and it's uncontested that no weapon was ever observed. And given that there's less here than there was in Odom and a reversal was required in Odom, I think that that governs the outcome here. You have a tougher case under 924C. Yes. Yes, we do. The 924C is the standard is different. They need only show that the weapon is present. And we don't contest that there's enough circumstantial evidence here to raise an inference that a weapon was present. You're not going to you're not going to continue your argument that there's reason he hit it during this robbery, but he had it in the one before and the one after. Well, I am going to continue that. I think that it makes perfect sense that. Let me make sure I have the facts straight. There are three robberies and two of them, the first one, the note says I have a gun and then he flashes the gun. Correct. And in the second one, the note says it's a robbery. It doesn't mention a gun. Correct. And there's no evidence that he flashed the gun. Correct. That's six. That's seven. Six and seven. Six is a substantive bank robbery charge and seven is the 924C charge that accompanies the substantive bank robbery charge. I'm just talking about the basic facts. Yes. The third one, there's a note and he flashes the gun. Correct. What I have not been able to figure out looking at the record that maybe you can you can tell me is what did the second note say? The second robbery or the final robbery or the third note? The one in the final robbery. We know we have the first note says I have a gun. He flashes a gun. We know that there is a second one doesn't mention a gun and there is no gun shown. And the third one, I don't there's a gun shown, but I don't know what the note says. And I'm not going to figure  and the text. The gun is showing. The text is matching. Guns are showing with the text of the notes. And frankly, I'm not I'm not certain the text of the note. I'm sure that Mr. Rice will probably find that while we're discussing. But I think the significant thing here is that the change between the first robbery and the second robbery was not just that. I understand. I understand. You may not think it's significant, but the answer to my question is you don't know. The answer is I don't know. The answer is I don't know. But I think also you don't know because it's not on the record or you don't know because because I'm not I'm not sure I would have to review the record to see what it is. I'm not certain what it is at this point. I don't I don't have a recollection, but I think that we need to look at not just the pattern of the robberies on May 13th, where there were three robberies on May 13th. There were two prior robberies as well. So there was a pattern of while there were three robberies on the day in question, there was a total of five robberies. Some of those were unarmed. Some of those were armed. Four of the five robberies were caught on videotape, and the teller's observations were consistent with the videotape in all of those instances. Only this contested case, the second robbery on May 13th, was not videotaped. Apparently they had a system, but someone neglected to put the tape in the VCR, so there was no videotape. But the first robbery on April 27th, the defendant had a clear pattern here. He would come in, provide a note in a very calm manner. In all of the cases, the other people in the bank weren't even aware there was a robbery until after it had occurred. But the first robbery, the individual provided a note, said it was a robbery. The teller testified that there was no weapon. The videotape showed there was no weapon. The second robbery on another day, the person submitted a weapon, sort of lifted his jacket to reveal the weapon, provided a note, and left. The videotape on that day showed there was a weapon, and the teller testified they saw the weapon. Then we go to the third day, where again, on the first robbery, it's the same MO. The jacket's lifted. The note says there's a gun. The teller says there's a weapon. The video shows a weapon. And then there's a period of time. We're not sure of the exact time frame, but between the first and third, it was about an hour and 40 minutes. So somewhere in the interim, there's a second robbery. You just gave me a description of the third one that says the note says there was a gun, which answers the question I asked, but it doesn't... Well, there's actually five over three different days. There's three on May 13th, which is the date of the robbery in question. Okay. So the third robbery was actually the first robbery on May 13th. It was the third robbery of the five robbery series, but it was the first robbery on the day when three robberies were committed. And there the weapon was displayed, and I think that it's clearly possible that someone who had committed a robbery would hide or stash the weapon or evidence of the crime and then decide what to do next. And on the other occasions, there was only one robbery. On this day, there were three robberies, so it's entirely possible that the weapon was discarded, the person decided to commit another robbery, wrote out another note, and went in and committed a robbery without the weapon. Because, again, we have a total of five robberies. I think it's clear that some were armed, some were unarmed. And he used a different note in each one. Pardon? He used a different note in each one, apparently. Apparently. And I don't know whether the second and third notes or, excuse me, the second and third notes on May 13th, which would be the fourth and fifth of all the robberies, I'm not sure whether that note was different or the same. But we do know that between the first robbery on May 13th when the gun was present and the second robbery on May 13th when no gun was observed, that the note changed. And it changed, whereas the first note said there is a gun, the next note said there wasn't a gun. Well, you understand the problem. The jury, these robberies are committed in rapid succession, fairly rapid succession. The guy has a gun and shows it in the first robbery on the same day, then he doesn't show it in the second one. It doesn't mean he hasn't got it. It just may mean he had it. But it isn't proof beyond a reasonable doubt, given the surrounding circumstances, that there's patterns in an M.O. that the... We don't review for reasonable doubt. We review for substantial evidence. I realize that. The question for us is, could a reasonable jury infer that even though he didn't display the gun, he had it because he had it before and he had it after? And that's why my question was that I could ask to see whether the note gave a clue as to whether he had a gun. In the first one, he says I have a gun and he shows the gun. In the second one, he doesn't say he has a gun and he doesn't show the gun. And I'm interested to see what happened in the third one, where he did show the gun. Did he actually say, you know, so does the note give a hint as to maybe if you can establish a pattern like that, that he only says I have a gun when he actually displays a gun, then maybe that's a little stronger. But if, you know, putting that aside, why can't a reasonable jury infer that he's on a robbery spree? What's he going to do with a gun while he's on a robbery spree? Well, I believe they can infer it, but I don't believe, you know, there is some evidence. I'm not denying that. But even when they infer it, it has to be beyond a rational reason. Right. But there's no evidence on your side, except for the absence of cite, that he didn't have a gun on him, right? Pardon? I mean, he didn't testify. He didn't, you know, he didn't. No, he didn't. You don't have any affirmative evidence saying he didn't have a gun at the second. So all we're left is with the inference, right? Well. And your argument is it's not enough, and the government's argument is. Well, we have the testimony of the teller that there was no weapon. There was nothing indicating a bulge. There was nothing to indicate there was a weapon. And we would really be speculating, because all the surrounding circumstances show that the robbery in question was out of character with the other robberies if there was a gun there. Because it would be different from his MO and the other robberies where it was uncontested whether there was or wasn't a weapon. Except for us. Okay. I would reason. Thank you. We'll hear from the government. May it please the Court, my good friend and colleague, Mr. Kersten.  I'm an AUSA in the Eastern District of California. Judge, to answer your question regarding what was in the note on the third robbery, that's found at the victim teller's testimony on page 327. I asked him. Is it in the excerpt, correct? No, it's in the transcript, the reporter's transcript from the trial. 327. 327. I asked him, did you read the note? Answer, I did. What did it say? I have 327. It's page 70 of the transcript. Where are you reading from? Line 14 through 17. Did you read the note? Yes. Go ahead. I did. What did it say? It said, give me all your hundreds, fifties, and twenties. And I believe it said somewhere on there, this is not a joke. I don't know if he said that or if that was on the note. Basically, this is a sufficiency of the circumstantial evidence. I'm sorry. So this was the third robbery. This was the third one. There's no reference to a gun in the note. So the third note does not reference a gun. Right. And with respect to the second one. That's the one where there was evidence that he did flash. Yes, where he lifted his coat and showed it. The way these robberies happen is that the victim teller is at the counter, the robber comes up, places the note on the counter, then lifts his jacket or his shirt to show the gun. In the second robbery, when you look at the testimony of Maria Cook, who was the victim teller in that case, this is what she said when I was asking her about what happened. Did you observe any weapons? No. What did you do? I read only probably the first sentence referring to the note. And as soon as I realized, okay, this is a robbery, I went ahead and took all the bills from my top drawer. So when she sees that note placed down on the counter, it says this is a robbery, she goes to her, you know, teller drawer and starts removing the money. On the other, that's about the same time that he's lifting his coat. And it didn't show up on the surveillance tape because it wasn't running. There's no surveillance tape, unfortunately, in the second robbery. Because there is a video camera. Somebody didn't load the tape. And so when they went to get it, it was nothing. This is a very short period of time, an hour and 40 minutes, three robberies, wearing the same clothes. This happens in Fresno. You can get basically anywhere in Fresno in about 20, 30 minutes. It's not that big a city. There's no reason in the government's view that he would have discarded the gun. How far were the three apart if you were driving from one to the other? 20 minutes. I'm sorry, 20 minutes to go from the first to the second and the second to the third? Depending on traffic. I'm sorry, 20 minutes for each leg? Yes. So he would have had about an hour that wasn't accounted for in terms of travel time. So he would have had time to stash the gun after the first one and retrieve it after the second one. That's true. Yes. There's no way to show one way or the other what he did during the intervening time between, you know, excluding his travel time. But there's really no reason to think why would you do one robbery with a gun, then decide, well, I'm not going to use a gun for this one. And then you go do the third one, and now you decide you're going to use a gun. I can certainly conceive of reasons why you might do it. You might say, look, I did it with a gun. I'm going to go try it without one and see, you know, if it's less dangerous, less punishment, presumably. And then he does it, and then he says, boy, I felt really awful doing that because I didn't have my gun there to feel protected. So I'm going to go back to ‑‑ I mean, I can conceive of reasons, but the ‑‑ let's see here or there. Sure. The question is whether the jury could draw the opposite inference from the facts. And I think that's the key, is whether any rational juror could reach the conclusion they did this And the evidence that they had, I believe, supports the verdict. Do you want to deal with Odom? With respect to Odom. Tough case for you. Tough case. I disagree with the decision, you know, in Odom, because I do think that when a person takes a gun and it's concealed on their person, whether the teller ever sees it or not, they put lives in danger inside the bank. Because they don't know, you go into a bank with a gun concealed on you, the teller doesn't know it. And so ‑‑ but there may be security guards in the bank or outside the bank they may confront. And at that point, it becomes a shootout. And I think that that kind of conduct deserves a conviction for armed bank robbery as opposed to unarmed bank robbery. In this case, you agree with counsel. And in this ‑‑ Odom is tough for you. And I take it you agree with counsel that it makes no difference to the sentence. It makes no difference. If it's reversed. Correct. The ‑‑ actually, the arming part of the bank robberies is all washed out by the 924Cs in the sentencing. Okay. Thank you. I would just note that the language ‑‑ You should probably get to the microphone. The language of the notes in the second and third robberies on May 13th, they're identical. They both ‑‑ one says, give me all your large bills, hundreds, fifties, twenties. The other says, give me all your hundreds, fifties, and twenties. So between the second and third robbery, it appears it was an identical note used in both of those. But the change is between the first and second robbery where the reference to the gun was deleted. And I don't know that it's particularly relevant, but I would think that the distance between the different banks, the legs, were probably closer to 10 minutes than 20 minutes in any event. Thank you.  Thank you. Any other cases I used? Just a minute. Movie number one. We now hear argument in? Hard. Hard? Hard versus brown. I like to reserve about three minutes. The question presented here is whether a public defender is acting under color of state law where he intentionally and willfully withholds evidence that would have exonerated the defendant. Now, I'd like to just kind of go over some of the facts that maybe they're not so obvious. I believe at trial I would be able to prove that the victim here,
judges: Wallace, Kozinski, Thomas